610 So.2d 148 (1992)
STATE of Louisiana
v.
David L. MALONE.
No. 24862-KW.
Court of Appeal of Louisiana, Second Circuit.
November 25, 1992.
S. Patrick Phillips, Bossier, for David L. Malone.
Paul Joseph Carmouche, Paul L. Wood, Shreveport, for State of La.
Before MARVIN, LINDSAY and VICTORY, JJ.
PEREMPTORY WRIT GRANTED; JUDGMENT REVERSED AND RENDERED.
We grant this application, reviewing and reversing applicant's misdemeanor conviction under a Crosby plea by which applicant reserved his right to seek review of the trial court's denying his motion to quash the charge against him on the grounds that he was not tried by the state within one year after a bench warrant issued. CCrP Arts. 578, 579A.(3) and B.
*149 We sustain applicant's motion to quash. See and compare State v. Nations, 420 So.2d 967 (La.1982), and State v. Guidry, 395 So.2d 764 (La.1981), DWI misdemeanor cases, and State v. Taylor, 439 So.2d 410 (La.1983), and State v. Amarena, 426 So.2d 613 (La.1983).
Applicant was arrested for DWI in November 1989. When he and his attorney of record failed to appear at applicant's trial date, March 16, 1990, a bench warrant issued to interrupt the one-year time limitation. Art. 579A.(3). Applicant's name, address and number were listed in the Shreveport telephone directory. The address shown on applicant's driver's license (Corinne Circle) was not the address (Cortez Street) where he was living when the bench warranted issued. Applicant mentioned four addresses where he either lived or owned property in Shreveport, but said his residence telephone number had been "the same" for 10 years.
Applicant's motion to quash, filed January 27, 1992, was heard on May 22, 1992. The only witness from the Marshal's Office was Deputy Marshal Menefee who testified what the records of the office reflected about Applicant's bench warrant. Chief Deputy Leon Williford of the City Marshal's office attempted to telephone applicant at Applicant's correct number (797-9585) on March 21, 1990.
In response to that telephone call, answered by someone other than applicant, another deputy marshal (Isaac Brass) went to 10312 Cortez street in Shreveport, "a new address [for applicant that was] noted on the arrest warrant by another deputy in our [marshal's] office," where Brass left "a card," according to Menefee. Menefee explained on re-direct examination that "on average on a DWI failure to appear," the marshal's office would attempt to make "in the neighborhood of four contacts ... [phone conversations and] ... personal contacts." He acknowledged the records did not indicate that there were any efforts made to contact applicant after the two attempts mentioned above in March 1990.
Williford and Brass did not testify. The only other testimony at the hearing came from applicant. His testimony is to this effect:
When he was arrested for DWI in November 1989, applicant's drivers license showed his address on Corinne Circle in Shreveport, where he owned that property, but at that time he was residing at 10312 Cortez Circle in Shreveport with his wife and children. After living on Corinne he resided "two blocks over at the townhouses," which he said was "1031 Monet or something." In July 1991 he and his family moved from Cortez to an address on Ellerbe Circle where they were living when the motion to quash was heard in 1992. His telephone number was "always in the phone book." We note that his name, address and number (797-9585) are listed in the 1992-93 telephone directory. Applicant testified he has "always had" his currently-listed phone number for "ten years, something like that" and that he had lived in the same part of town where its not been changed when he moved. "[I]t stays the same the same[.] [E]very time I changed addresses the phone number remained the same."
Applicant agreed that he "had notice from the Marshal's office that there were bench warrants" for him, but was not asked when he learned this. Our emphasis. Without objection from the State, applicant testified he received a copy of a letter his attorney of record wrote to Judge Kelly, the City Judge, dated May 23, 1990, about bench warrants that were issued for him and another client of the attorney. A copy of this letter was introduced without objection by the State. The letter complains of the issuance of the bench warrant and asks the judge to request "the Clerk to recall the bench warrants, reinstate the bonds and set these cases for trial." The record does not show whether Judge Kelly received the letter.
Applicant said he "understood that the matter was to be placed back on the docket for trial," but learned in December 1991 that the bench warrant was still outstanding when he went to renew his driver's license. He then telephoned "City Hall" to confirm that.

*150 DISCUSSION
From the transcript of the hearing, we conclude that the city marshal's office, with any reasonable effort, could have found and arrested applicant on the bench warrant after March 31, 1990. The city marshal had applicant's correct telephone number and address noted on its records. He had an attorney of record who apparently had asked that applicant's bench warrant be recalled and his case fixed for trial. The State did not refute his testimony that he was residing at the Cortez street address until July 1991 with his wife and two children. The city marshal's office showed only that its efforts to contact applicant ended on or before March 31, 1990, with first the telephone call and then the "card." The applicant was aware that a bench warrant had issued in March 1990, but before December 1991, he thought or "understood" his case would be "placed back on the docket for trial."
The bench warrant of March 16, 1990, was the "cause" that interrupted the Art. 578 one-year period of limitation. Art. 579A(3). That period of limitation shall begin to run anew from the date the cause of interruption no longer exists. Art. 579B. We conclude that the "cause" of the interruption ceased to exist within some reasonable time after the chief deputy marshal's telephone contact with some person at applicant's telephone number and the leaving of the "card" by the marshal's deputy at applicant's Cortez street address in March 1990. Certainly the period began to run anew more than one year before applicant filed his motion to quash on January 27, 1992.
The period of limitation in Art. 578 begins to run anew when the State knows or should know of a criminal defendant's whereabouts, where the defendant can be served or arrested. After the period of limitation has run on its face, the burden of proving, on the hearing of a motion to quash, the duration of any interruption of the period is on the State. This burden can be met by evidence that the defendant was attempting to avoid detection and service at given addresses or that the State had made reasonable, though unsuccessful, efforts to locate defendant at addresses he had given. See cases cited supra, Taylor, Amarena, Nations, and Guidry.
In Taylor, supra, the court observed the defendant did not notify the court of two different changes of address, but this singular fact, standing alone, was not sufficient proof of an intent to elude authorities. There, the court held the state failed to prove that the defendant was not amenable to service even though the state made at least two attempts to serve him.
In Nations, the court held that the state failed to establish that the defendant absented himself from his usual place of abode to avoid prosecution even though defendant had twice changed apartments and could not be served at his given residence. The holding was founded on the finding that defendant had notified his bonding company of each change of address, had filed a change of address form with the post office, and had maintained a correct listing of his name, number and address with the telephone company. Nations was a DWI misdemeanor case.
In another DWI case, the defendant changed residences before service was attempted. Service was later attempted at his first address and then at the changed address. A bench warrant issued and notice of bond forfeiture was ordered served on defendant's surety. The court held that the state failed to meet its heavy burden of showing legal cause sufficient to interrupt the time for commencement of trial because the state failed to follow up on the notice to the surety for almost two years. State v. Guidry, 395 So.2d 764 (La.1981).
Each case, of course, must stand on its own facts. Here the State did not make any effort after March 1990 to contact applicant or his attorney. The telephone contact at applicant's correct number had produced some information that applicant lived on Cortez street. A deputy marshal went there. The record does not suggest that the deputy thought the residence was vacant or abandoned. He left a "card" at *151 that address. We do not know what the card "said," if anything.
The State has not shown that applicant was attempting to avoid detection and service at either of the two addresses given them, at one of which no service whatsoever was attempted. The State showed only two attempts to contact applicant in March 1990, while the State's witness said, "on the average," the state made in the neighborhood of four attempts to contact a defendant on a DWI charge.

CONCLUSION
"Indifference" by a criminal defendant who has an attorney of record, whose correct number is listed in the telephone directory, and who does not otherwise attempt to avoid detection and service at given addresses, is not sufficient to prevent the Art. 578 period of limitation from running anew after interruption by a bench warrant. Such a defendant may be as "indifferent" as he chooses because the responsibility or burden is to respond to the authority of the arresting officer or to appear when ordered to do so. That responsibility or burden is on the State to have such defendant's case placed back on the court docket for trial or to have the bench warrant served, or to show, on the hearing of a motion to quash, that it made reasonable, although unsuccessful, efforts to contact or serve the warrant on the defendant, so as to allow the conclusion that that defendant had been avoiding the state's reasonable attempts to locate and serve or arrest him.

DECREE
The ruling complained of and applicant's conviction are reversed. The motion to quash is sustained by this court.
VICTORY, J., dissents with written reasons.
VICTORY, Judge, dissenting.
All of the cases cited in the majority opinion were decided prior to the 1984 Legislative amendment adding subsection A(3) to LSA-C.Cr.P. Art. 579, and dealt with interruptions under Art. 579A(1) and (2), i.e., flight or hiding by the defendant with the intent to avoid prosecution, or the state's inability to secure his presence for trial by legal process. In those cases, the cause of the interruption was held to no longer exist when the state found out where the defendant was, or failed to take reasonable steps to locate him.
In my view, the cause of the interruption under Art. 579A(3) no longer exists when the defendant again appears in court, or the defendant is arrested, is in custody on the warrant and the state is aware of it, or his whereabouts are known to the state. Once the state shows the interruption, i.e., the failure of the defendant to appear in court after notice in the record, the defendant should then have to prove that the cause of the interruption no longer existed. Here, the defendant did not appear in court until after he filed his Motion to Quash in January of 1992 and was never arrested on the bench warrant and taken into custody.
The defendant claims his attorney wrote Judge Kelly in May 1990 explaining their non-appearance at trial over two months earlier, but failed to prove (1) the letter was actually sent to, or received by, Judge Kelly; (2) the District Attorney and the marshall were sent copies of the letter; (3) the bench warrant was recalled; (4) the defendant's correct address was given in the letter, or (5) the letter was filed into the record. The trial judge apparently did not believe a letter had been sent to Judge Kelly because he stated: "It's clear to me that some efforts should have been made in this case by either the defendant or the defendant's attorney to have this matter placed back on the docket, or to have the warrant executed or recalled."
Merely because the marshall's office was orally directed to the Cortez Street address where no personal contact was made with the defendant or his family, does not mean the state knew that the defendant lived on Cortez at that time. At arrest, the defendant provided the state with his old address on Corinne Circle, although he testified he was living on Cortez at the time. The defendant testified he had lived at three *152 other addresses, including Cortez Street, since he lived on Corinne Circle. Although the defendant may have been living on Cortez Street in March of 1990, he failed to show the state knew it at the time. Hindsight is 20/20, and it is easy to now say the state should have known it because the defendant later testifies it is true. The defendant should not unjustly benefit from his failure to appear for trial and to give the arresting officer, his bondsman, and the state his correct address.
I would deny the writ.